| | |
|---|---|
| 1 | NEAL S. SALISIAN, SBN 240277 |
| | neal.salisian@salisianlee.com |
| 2 | JARED T. DENSEN, SBN 325164 |
| | jared.densen@salisianlee.com |
| 3 | BRIAN C. ZHANG, SBN 342032 |
| | brian.zhang@salisianlee.com |
| 4 | **SALISIAN | LEE LLP** |
| | 550 South Hope Street, Suite 750 |
| 5 | Los Angeles, California 90071-2924 |
| | Telephone:  (213) 622-9100 |
| 6 | Facsimile:   (800) 622-9145 |
| 7 | MARISA D. POULOS (SBN 197904) |
| | marisa.poulos@balboacapital.com |
| 8 | **BALBOA CAPITAL CORPORATION** |
| | 575 Anton Boulevard, 12th Floor |
| 9 | Costa Mesa, California 92626 |
| | Tel: (949) 399-6303 |
| 10 | |
| 11 | Attorneys for Plaintiff |
| | BALBOA CAPITAL CORPORATION |

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALBOA CAPITAL CORPORATION, a California corporation, | Case No.: 8:24-cv-01125-PA-PVC |
| Plaintiff, | [Assigned to the Hon. Percy Anderson] |
| vs. | **BALBOA CAPITAL CORPORATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT OLEG AZIZOV** |
| OLEG AZIZOV, an individual, | |
| Defendant. | Complaint Filed:  May 28, 2024 |
| | SAC Filed:           June 17, 2024 |

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-01125-PA-PVC

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 23, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9A of the First Street Courthouse, located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable Percy Anderson presiding, plaintiff Balboa Capital Corporation, a California corporation ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against Defendant Oleg Azizov, an individual ("Azizov" or "Defendant"), for a judgment amount of **$158,619.77**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendants in the total amount of $158,619.77, as Balboa has established (a) a sum certain due and owing by Defendant Azizov to Balboa pursuant to the Equipment Financing Agreement and Personal Guaranty entered into by Azizov and Balboa; (b) that Defendant Azizov is not in military service and is neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//
//
//

1

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-01125-PA-PVC

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached thereto, the pleadings and papers filed in this action, and upon such further briefing, authorities, and argument submitted to the Court prior to, or during, the hearing on this matter.

DATED: August 22, 2024                SALISIAN | LEE LLP

By: _____
    Jared T. Densen
    Neal S. Salisian
    Brian C. Zhang

Attorneys for Plaintiff
BALBOA CAPITAL CORPORATION

## **TABLE OF CONTENTS**

I. INTRODUCTION AND RELEVANT FACTS ................................................... 1

II. LEGAL ARGUMENT ........................................................................................ 3

   A. Plaintiff Will Be Highly Prejudiced If Its Default Judgment Application Is Denied. ............................................................................................................. 4

   B. Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled. ................................. 6

   C. The Sum Of Money At Stake Favors An Entry Of A Default Judgment. ....... 8

   D. There Are No Material Facts That Are Reasonably In Dispute. ..................... 9

   E. Defendants' Defaults Are Not The Result Of Excusable Neglect. ................ 10

   F. Policy Concerns Favor Default Judgment In This Matter. ............................ 12

   G. Plaintiff Has Proven Its Damages. ................................................................ 12

III. CONCLUSION ................................................................................................ 14

# **TABLE OF AUTHORITIES**

CASES

*Acoustics, Inc. v. Trepte Constr. Co.*,
    14 Cal. App. 3d 887, 916 (1971).................................................................... 6

*Draper v. Coombs*,
    792 F.2d 915, 924 (9th Cir. 1986).................................................................. 10

*Educational Serv., Inc. v. Florida State Board for Higher Education*,
    710 F.2d 170, 176 (4th Cir. 1983)............................................................ 10, 11

*Eitel v. McCool*,
    782 F.2d 1470, 1471-72 (9th Cir. 1986)................................................ 4, 8, 10

*Geddes v. United Fin. Group*,
    559 F.2d 557, 560 (9th Cir. 1977).................................................................. 6, 9

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
    725 F.Supp.2d 916, 921 (C.D. Cal. 2010)...................................................... 9

*McKnight v. Webster*,
    499 F.Supp.420, 424 (E.D. PA 1980) ............................................................ 11

*NewGen, LLC v. Safe Cig, LLC*,
    804 F.3d 606, 616 (9th Cir. 2016) ……………………………..……10, 11

*O'Connor v. State of Nevada*,
    27 F.3d 357, 364 (9th Cir. 1994).................................................................... 10

*Pena v. Seguros La Comercia, S.A.*,
    770 F.2d 811, 814 (9th Cir. 1985).................................................................. 12

*Penpower Tech, Ltd.*,
    627 F.Supp.2d at 1093.................................................................................... 8, 12

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002)................................................ 4, 5, 6

*Reichert v. Gen. Ins. Co.,*
    68 Cal. 2d 822, 830 (1968)............................................................................. 6

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
   194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ....................................................... 11

*Walters v. Statewide Concrete Barrier, Inc.*,
   No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ......... 8

STATUTES

Civ. Code §§ 1620, 3300 ....................................................................................... 6

Fed. R. Civ. P. 55 ................................................................................................... 3

RESTATEMENT 2d. CONTRACTS § 235(2) ....................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND RELEVANT FACTS

Plaintiff Balboa Capital Corporation, a California corporation ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against Defendant Oleg Azizov, an individual ("Azizov" or "Defendant")[1].

### a. The Equipment Financing Agreement.

This action involves a claim for damages by Balboa against defendant Azizov for breach of the Equipment Financing Agreement No. 405807-000 (the "EFA"), and corresponding personal guaranty. [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and 703 Bakery and Azizov, on the other, entered into the EFA on or about June 10, 2022. [*See id*.] Under the terms of the EFA, Balboa loaned to 703 Bakery the sum of $150,763.98, in order to finance equipment for its business (the "Collateral"). [*See id*.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with 703 Bakery, Azizov personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA (the "Guaranty"). [*See id*., ¶4.] Balboa relied on such Guaranty to finance the Collateral for 703 Bakery's business. [*See id*., Exh. B.]

Under the EFA, 703 Bakery was required to make twenty (20) quarterly payments of $11,039.11, payable on the 1st day of each three-month period beginning September 1, 2022. [*See id*., ¶5.] The last payment received by Balboa was credited toward the payment due for December 1, 2023. [*See id*., Exh. C.] Therefore, on or about March 1, 2024, 703 Bakery breached the EFA, and Azizov

---

[1] As to the instant Motion, Balboa is only seeking default as to defendant Azizov, as 703 Bakery Corp. ("703 Bakery") filed a Chapter 11 Bankruptcy prior to this action, and thus Balboa dismissed 703 Bakery with the filing of the Second Amended Complaint. [*See* Dkt. 13.]

breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default

At the time of Defendants' default there remained fourteen (14) quarterly payments, for a total of $154,547.54, due to Balboa. [*See id.*, ¶6, Exh. C.]

Following Defendant's default, Defendant made one full quarterly payment of $11,039.11 which Balboa credited for the payment due on March 1, 2024. [*See id.*, ¶7.] Defendants have since failed to make further payments. [*See id.*] Thus, **$143,508.44** remains owed to Balboa. [*See id.*]

In addition, based on the amount due of $143,508.44, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from March 1, 2024 (the date of breach), to September 23, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$8,137.17**, accruing at a rate of **$39.31 per day**, until the entry of judgment. [*See id.*; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

### b. Attorneys' Fees and Costs.

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Ngo Decl., ¶3, Exh. A.] Balboa has incurred **$504.00**, in recoverable costs. [*See* Densen Decl., ¶7, Exh. E.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$6,470.16**. [*See id.*, ¶7.]

### c. Motion for Default Judgment.

Balboa's Motion for Default Judgment satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b). Balboa filed its Complaint and case-initiating documents on May 28, 2024. [*See* Dkts. 1-4.] Balboa subsequently filed its Second Amended Complaint and amended case-initiating documents on June 17, 2024. [*See* Dkts. 13-16.] Defendant Azizov was properly served on July 2, 2024, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkt. 18.] On July 30, 2024 Balboa filed its Request for Clerk to Enter Default

against Azizov ("Default Entry Request"), and the Clerk of the Court entered the default against Azizov on July 31, 2024. [*See* Dkts. 20-21.]

Defendant Azizov is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the Servicemembers Relief Act of 1940 ("SCRA"). [*See* Densen Decl., ¶4, Exh. D.]

Moreover, this Court has subject matter jurisdiction over the instant action. The amount in controversy, as alleged in the Complaint and as set forth herein, exceeds $75,000. [*See* Dkt. 1; *see also* Densen Decl., ¶9.] Plaintiff Balboa was and still operates as a California corporation, with its principal place of business in Orange County, California. [*See* Dkt. 1, ¶1.] Balboa is also now a wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank. [*See id.*]

Based upon my office's research, and upon information and belief, defendant Azizov is a citizen of the State of New York, including the Driver's License Azizov provided to Balboa which lists Azizov's domicile as Brooklyn, NY 11229. [*See id.*, ¶10.]

As set forth below, a default judgment should be entered against Defendant Azizov since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendant Azizov in the amount of **$158,619.77**.

## II.   LEGAL ARGUMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default. *See* Fed. R. Civ. P. 55. Local

Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on May 28, 2024. [*See* Dkts. 1-4.] Balboa subsequently filed its Second Amended Complaint and amended case-initiating documents on June 17, 2024. [*See* Dkts. 13-16.] Defendant Azizov was properly served on July 2, 2024, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkt. 18.] On July 30, 2024 Balboa filed its Default Entry Request, and the Clerk of the Court entered the default against Azizov on July 31, 2024. [*See* Dkts. 20-21.]

Defendant Azizov is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the SCRA. [*See* Densen Decl., ¶4, Exh. D.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment. *See id*.

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

### A. Plaintiff Will Be Highly Prejudiced If Its Motion for Default Judgment Is Denied.

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendant Azizov's deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to the EFA, financed the Collateral for 703 Bakery, with Defendant agreeing to make twenty (20) quarterly payments of $11,039.11, for which fourteen (14) quarterly payments, for a total of $154,547.54, still remain due to Balboa at the time of Defendant's default. [*See* Ngo Decl., ¶¶5-6, Exh. C.] Following Defendant's default, Defendant made one full quarterly payment of $11,039.11 which Balboa credited for the payment due on March 1, 2024. [*See id.*, ¶7.] Defendants have since failed to make further payments. [*See id.*] Thus, **$143,508.44** remains owed to Balboa. [*See id.*]

Balboa has made demands for its monies from Defendant under the Guaranty, all of which Defendant Azizov has failed to pay back. [*See id.*, ¶8.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendant has been unwilling to participate in, or otherwise, acknowledge the litigation. Balboa's Motion for Default Judgment is its final option for an attempt at recovery against Defendant Azizov, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims against Defendant Azizov. *See PepsiCo*, 238 F.Supp.2d at 1177.

Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendant Azizov will obtain a significant windfall of over $143,508.44. Not only will the deliberate nonaction by Defendant Azizov and her continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendant Azizov to be granted by this Court.

**B.      Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together. *See PepsiCo*, 238 F.Supp.2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the Defendants, and (4) resulting damages proximately caused by the Defendants' breach of contract. *See Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met. Specifically, Balboa, on the one hand, and 703 Bakery and Azizov, on the other, entered into the EFA on or about June 10, 2022. [*See* Ngo Decl., ¶3, Exh. A.] Under the terms of the EFA, Balboa loaned to 703 Bakery the sum of $150,763.98, in order to finance the Collateral for its business. [*See id*.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with 703 Bakery, Azizov personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA via the Guaranty. [*See id*., ¶4, Exh. B.] Balboa relied on such Guaranty to finance the Collateral for 703 Bakery's business. [*See id*.]

Under the EFA, 703 Bakery was required to make twenty (20) quarterly payments of $11,039.11, payable on the 1st day of each three-month period

beginning on September 1, 2022. [*See id.*, ¶5, Exh. C.] The last payment received by Balboa was credited toward the payment due for December 1, 2023. [*See id.*, Exh. C.] Therefore, on or about March 1, 2024, 703 Bakery breached the EFA, and Azizov breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendant's default there remained fourteen (14) quarterly payment, for a total of $154,547.54, due to Balboa. [*See id.*, ¶6, Exh. C.]

Following Defendant's default, Defendant made one full quarterly payment of $11,039.11 which Balboa credited for the payment due on March 1, 2024. [*See id.*, ¶7.] Defendants have since failed to make further payments. [*See id.*] Thus, **$143,508.44** remains owed to Balboa. [*See id.*]

In addition, based on the amount due of $143,508.44, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from March 1, 2024 (the date of breach), to September 23, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$8,137.17**, accruing at a rate of **$39.31 per day**, until the entry of judgment. [*See id.*; *see also* Densen Decl.), ¶¶5-6.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Ngo Decl., ¶3, Exh. A.] Balboa has incurred **$504.00**, in recoverable costs. [*See* Densen Decl., ¶7, Exh. D.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$6,470.16**. [See *id.*, ¶7.]

There is no doubt, and it cannot be disputed that: (1) Balboa and 703 Bakery and Azizov entered into the EFA and Guaranty; (2) Azizov personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA; (3) 703 Bakery received the loan in order to finance the Collateral for its business; (4) 703 Bakery and Azizov ceased making payments pursuant to the EFA and Guaranty; and (5) Balboa suffered and continues

to suffer damages due to 703 Bakery and Azizov's continued nonpayment. Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims. In fact, no known defenses exist to any of the material facts.

### C. The Sum Of Money At Stake Favors An Entry Of A Default Judgment.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment. *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts). This requires the court to assess whether the recovery sought is proportional to the harm caused by Defendants' conduct. *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the Defendants' actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F.Supp.2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the EFA in the amount of **$143,508.44**; prejudgment interest in the amount of **$8,137.17** (from the date of breach through the date Balboa's Motion has been noticed to be heard), plus **$39.31 per day** until the entry of judgment; statutory attorneys' fees, as fixed by Local Rule 55-3, in the amount of **$6,470.16**; and costs in the amount of **$504.00**. [*See* Densen Decl., ¶¶5-7, Exh. E.] The damages sought are contractually-based and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*]

As such, the sum of money sought is reasonable and far from speculative. It is also substantially less than the $3 million sought in *Eitel*, in which this sum, <u>and other factors</u>, weighed in the favor of denying default judgment. And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D. **There Are No Material Facts That Are Reasonably In Dispute.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560. Where a plaintiff's complaint is well-pleaded and the Defendants make no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute. Balboa, on the one hand, and 703 Bakery and Azizov, on the other, entered into the EFA on or about June 10, 2022. [*See* Ngo Decl., ¶3, <u>Exh. A</u>.] Under the terms of the EFA, Balboa loaned to 703 Bakery the sum of $150,763.98, in order to finance the Collateral for its business. [*See id*.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with 703 Bakery, Azizov personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA via the Guaranty. [*See id*., ¶4.] Balboa relied on such Guaranty to finance the Collateral for 703 Bakery's business. [*See id*., <u>Exh. B</u>.]

Under the EFA, 703 Bakery was required to make twenty (20) quarterly payments of $11,039.11, payable on the 1st day of each three-month period

beginning on September 1, 2022. [*See id.*, ¶5.] The last payment received by Balboa was credited toward the payment due for December 1, 2023. [*See id.*, Exh. C.] Therefore, on or about March 1, 2024, 703 Bakery breached the EFA, and Azizov breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendants' default there remained fourteen (14) quarterly payment, for a total of $154,547.54, due to Balboa. [*See id.*, ¶6, Exh. C.]

Following Defendant's default, Defendant made one full quarterly payment of $11,039.11 which Balboa credited for the payment due on March 1, 2024. [*See id.*, ¶7.] Defendants have since failed to make further payments. [*See id.*] Thus, **$143,508.44** remains owed to Balboa. [*See id.*]

Defendant Azizov cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action. If anything, defendant Azizov's refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E. Defendant's Default Is Not The Result Of Excusable Neglect.

Excusable neglect is not found where a Defendants who was properly served simply ignored the deadline to respond. *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that Defendants' counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect"). In fact, courts have required some showing of good faith by the defaulted Defendants to constitute "excusable neglect." *See Eitel*, 782 F.2d at 1471-72 (Defendants' failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where Defendants filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where Defendants has good faith of a timely answer); *Educational Serv.*,

*Inc. v. Florida State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where Defendants had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F. Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where Defendants sought an extension of time to respond, but a default judgment was sought in the interim).

Where the Defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant Azizov failed to make any showing whatsoever that his unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. Defendant Azizov was properly served by substituted service at 1773 E 29th St, Brooklyn, NY 11229 upon Zoya Peysakhav as co-occupant. [*See* Dkt. 18.] Defendant has not yet made any appearance in the action, and thus, has not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a Defendants makes good faith showing that the Defendants attempts to participate in the litigation to address and defend the allegations set forth against the Defendants. Declining to respond to a complaint after proper service (even in the case where Defendants' counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect. *See NewGen*, 804 F.3d at 616.

Here, Defendant Azizov has failed to acknowledge his wrongdoings and the allegations he faces, even in the slightest degree. Instead, Defendant has blatantly ignored Balboa's Complaint and all other papers filed thereafter. Rather, Defendant

Azizov's course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F. Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added). The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment. *See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (Defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment. As detailed in II.E., *supra*, Defendant has made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action. Defendant has deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendant Azizov's refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendant for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

### G. Plaintiff Has Proven Its Damages.

Under the EFA, 703 Bakery was required to make twenty (20) quarterly payments of $11,039.11, payable on the 1st day of each three-month period beginning on September 1, 2022. [*See id.*, ¶5.] The last payment received by Balboa was credited toward the payment due for December 1, 2023. [*See id.*, Exh. C.] Therefore, on or about March 1, 2024, 703 Bakery breached the EFA, and

Azizov breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendant's default there remained fourteen (14) quarterly payment, for a total of $154,547.54, due to Balboa. [*See id.*, ¶6, Exh. C.]

Following Defendant's default, Defendant made one full quarterly payment of $11,039.11 which Balboa credited for the payment due on March 1, 2024. [*See id.*, ¶7.] Defendants have since failed to make further payments. [*See id.*] Thus, **$143,508.44** remains owed to Balboa. [*See id.*]

In addition, based on the amount due of $143,508.44, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from March 1, 2024 (the date of breach), to September 23, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$8,137.17**, accruing at a rate of **$39.31 per day**, until the entry of judgment. [*See id.*; *see also* Densen Decl., ¶¶5-6.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Ngo Decl., ¶3, Exh. A.] Balboa has incurred **$504.00**, in recoverable costs. [*See* Densen Decl., ¶7, Exh. E.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$6,470.16**. [See *id.*, ¶7.]

Altogether, this totals out to **$158,619.77** (as of September 23, 2024), calculated as follows:

| | | |
|---|---|---|
| - | Amount owed: | $143,508.44 |
| - | Prejudgment Interest: | $  8,137.17 |
| - | Attorneys' Fees: | $  6,470.16 |
| - | Recoverable Costs: | $     504.00 |
| - | **Total** | **$158,619.77** |

### III. **CONCLUSION**

Based on Balboa's Complaint, Motion for Default Judgment, and all supporting papers, Balboa respectfully requests that the Court grant its Motion for Default Judgment against Defendant Azizov, in the total amount of **$158,619.77**.

DATED: August 22, 2024          SALISIAN | LEE LLP

By: _____
Jared T. Densen
Neal S. Salisian
Brian C. Zhang

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION